UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY JAMES BROOKSHIRE,

Plaintiff,

v.

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, et al.,

Defendants.

No. 2:23-cv-2001 DJC CSK P

FINDINGS & RECOMMENDATIONS

Plaintiff is a county jail inmate proceeding pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. The parties' cross motions for summary judgment are fully briefed and before the Court. As discussed below, the Court recommends that plaintiff's motion for summary judgment be denied, and defendants' motion for summary judgment be granted.

I. BACKGROUND

Plaintiff filed this action on September 15, 2023. (ECF No. 1.) On May 2, 2024, plaintiff filed a timely second amended complaint. (ECF No. 13.) On May 14, 2024, this Court recommended that plaintiff's fourth claim, alleging violation of plaintiff's Fourteenth Amendment due process rights based on jail staff failing to reply to plaintiff's grievances, be dismissed. (ECF No. 14 at 2.) The Court also found it would be futile to grant plaintiff further leave to amend. (Id.) On August 2, 2024, the district court adopted the findings and

recommendations and dismissed without prejudice plaintiff's fourth claim. (ECF No. 19.) On May 29, 2024, this Court ordered that this case would proceed on plaintiff's Fourth Amendment claims against defendants Fred Rodrigues, Andrey Nedeoglo, Joshua Langensiepen, William Hertoghe, all detectives with the Sacramento County Sheriff's Department, and Gabriel Montano and Jason Carver, Badge #1055, both deputies with the Sacramento County Sheriff's Department, for the alleged use of excessive force during plaintiff's arrest on May 31, 2023.

On September 9, 2025, plaintiff filed a motion for summary judgment. (ECF No. 46.) On September 30, 2025, defendants filed an opposition. (ECF No. 47.) On October 23, 2025, plaintiff re-filed his motion for summary judgment, claiming portions of his prior filing had been lost in the mail.[1] (ECF No. 49.) On October 24, 2025, plaintiff submitted exhibits 19 to 39 in support of his motion. (ECF No. 50.) Plaintiff did not file a reply. (See Docket.)

On October 31, 2025, defendants filed a cross-motion for summary judgment. (ECF No. 51.) On December 3, 2025, plaintiff filed a timely opposition, his declaration, and a separate statement of undisputed material facts. (ECF Nos. 53 - 56.) On December 17, 2025, defendants filed a reply. (ECF No. 57.)

Briefing on both motions is now complete.

## II. SECOND AMENDED COMPLAINT

In his verified second amended complaint, plaintiff alleges his Fourth Amendment rights were violated by defendants Fred Rodrigues, Andrey Nedeoglo, Joshua Langensiepen, William Hertoghe, Gabriel Montano and Jason Carver, Badge #1055, based on their alleged use of excessive force during plaintiff's arrest, as follows. (ECF No. 13.)

---

[1] Plaintiff re-submitted his motion because he believed the entire original motion had not been received by the Court based on a letter he received about damaged mail. (ECF No. 49 at 1-15.) The Court has compared plaintiff's motion (ECF No. 46) to his subsequent filing ("re-submission") (ECF No. 49) and exhibits (ECF No. 50), and the original motion contains all of plaintiff's exhibits 1 through 39. The initial pages of plaintiff's re-submission pertain to the misrouted mail. (ECF No. 50 at 1-15; 55) One document in the original motion appears incomplete, but pages 3-6 are included later in the original filing. (Compare ECF No. 46 at 2, 6-9 to ECF No. 49 at 60-69.) Otherwise, the re-submission does not match the order of plaintiff's original motion, but nothing is provided in the re-submission that is not included in the original; indeed, the re-submission only contains portions of plaintiff's original motion. (See ECF No. 49 at 16-234.) Therefore, all references will be to plaintiff's original motion (ECF No. 46).

A. Claim One: During Arrest

During a May 31, 2023 traffic stop, plaintiff was a passenger in a vehicle stopped by Sacramento County Sheriff's plain clothed detectives. During the traffic stop, defendant Fred Rodriguez pointed an assault rifle at plaintiff after plaintiff complied with the orders, stating "You're lucky," in a threatening manner from the front seat. (Id. at 5.) Defendants William Hertoghe, Andrey Nedeoglo, and Joshua Langensiepen came to the rear passenger door to remove plaintiff. Andrey Nedeoglo seized plaintiff's right hand first, then plaintiff's left hand, which had been fractured along with his back in a recent car accident. (Id.) Plaintiff notified them of his injuries, which they ignored, and defendants William Hertoghe and Joshua Langensiepen joined in, while defendant Andrey Nedeoglo continued to twist and apply pressure to plaintiff's hand using excessive force while telling plaintiff to stop resisting. (Id.) Plaintiff was freed to the ground by the three defendants, causing pain to plaintiff's back, and they unnecessarily used knees in plaintiff's back while jerking his body with excessive and unreasonable force despite plaintiff's complaints about his recent injuries.

B. Claim Two: Transport from Patrol Car to the Hospital

Defendants William Hertoghe, Andrey Nedeoglo, and Joshua Langensiepen ignored plaintiff's pain complaints and intended to take plaintiff to the central intelligence division for questioning, but Sgt. Feil instructed them to take plaintiff to the hospital. (Id. at 6.) At the hospital, these defendants roughly removed plaintiff from the vehicle with no regard to plaintiff's pain and injuries. (Id.) While being pulled out, plaintiff fell to the ground and hit his left temple due to their negligence and the defendants "joked about it." (Id.) Plaintiff was roughly snatched off the ground and half-walked, half-dragged into the hospital. (Id.) When medical staff asked why plaintiff was there, an officer behind plaintiff responded, "he's a shooter, he's a carjacker," rather than explaining plaintiff's injuries. (Id.) Plaintiff was given a bandage for his head and right arm, and his vitals were taken despite plaintiff's pain complaints due to the defendants impatience and rushing of medical staff. (Id.) Medical staff confirmed plaintiff had been admitted on May 2, 2023 for fractures to his left hand and back from a car accident. (Id.)

///

C. Claim Three: At the Main Jail

On May 31, 2023, plaintiff was transported from the hospital to the Sacramento County Main Jail by defendants Gabriel Montano and Jason Carver, both deputies with the Sacramento County Sheriff's Department. Both deputies removed plaintiff from the vehicle and forced him into a WRAP restraint despite plaintiff's prior injuries, causing plaintiff excruciating pain in his back as well as his fractured left hand from being forced to sit on his hands while handcuffed. (Id. at 7.) Defendants Gabriel Montano and Jason Carver rolled plaintiff into booking where plaintiff was forced to sit in restraints for 1-1.5 hours, while others were brought in later and processed before plaintiff, and left plaintiff there. (Id.)

III. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). A verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The evidence of the

opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed on October 31, 2025, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 51-5 (citing Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc)).).

## IV. THE PARTIES' EVIDENCE

As noted above, plaintiff and defendants both filed motions for summary judgment. (ECF Nos. 46, 51.) The Court addresses both motions for summary judgment together, and in ruling on the merits of both motions, considers the evidence submitted in support of, and in opposition to, both motions. See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001) ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."); see also Johnson v. Poway Unified School District, 658 F.3d 954, 960 (9th Cir. 2011) (court must consider each party's evidence in resolving cross-motions for summary judgment)).

Because in this case plaintiff will bear the burden of proof at trial on his claims, in order to prevail on summary judgment, he must affirmatively demonstrate that based upon the undisputed facts no reasonable trier of fact could find other than for him. See Soremekun v. Thrifty Payless,

Inc., 509 F.3d 978, 984 (9th Cir. 2007). Because defendants do not bear the burden of proof at trial, in moving for summary judgment they need only prove an absence of evidence to support plaintiff's case. See Oracle Corp., 627 F.3d at 387.

A. Plaintiff's Evidence

Plaintiff submitted the following evidence: Plaintiff's verified second amended complaint (ECF No. 13).

With his motion for summary judgment, plaintiff submitted the following evidence:

- Plaintiff's declaration dated Aug. 31, 2025 (ECF No. 46 at 4-5.)
- Plaintiff's supplemental affidavit dated July 23, 2025 (Id. at 26-38.)
- Ex. 1: Thumb drive, Bate stamped DEF 000001-000008, 000009-000026 (Id. at 39.)
- Ex. 2: Medical records from June 30, 2023, and printed copies of photos from Axon Body 3 X60A4695A (Id. at 41-46; 47-48.)
- Ex. 3: Text from LexisNexis - § 52.1 Action for injunctive and other relief and printed copies of photos from Axon Body 3 X60335349 (Id. at 50, 51-54.)
- Ex. 4: Detective Reports by Hertoghe & Nedeoglo (Id. at 56-58.)
- Ex. 5: Printed copies of photos from Axon Body 3 X60335349 (Id. at 60-63.)
- Ex. 6: Printed copies of photos from Axon Body 3 X60338349 (Id. at 65-69.)
- Ex. 7: Printed copies of photos from Axon Body 3 X60335349 (Id. at 71-72.)
- Ex. 8: Unidentified text re deadly force; Cal. Penal Code § 835a from FindLaw, and printed copies of photos from Axon Body 3 X60335349 and Axon Body 3 X60338349 (Id. at 74, 75, 76-87, 88-94, 95-98.)
- Ex. 9: U.S. Constitution, Bill of Rights, Amendment 4 and printed copies of photos from Axon Body 3 X60335349 (Id. at 100, 101-02.)
- Ex. 10 to Ex. 20: Printed copies of photos from Axon Body 3 X60335349 (Id. at 104-08; 110-25; 127-30; 132-34; 136-45; 147-51; 153-54; 156-89; 191-200; 204-19; 221-33.)
- Ex. 21 to Ex. 28: Printed copies of photos from Axon Body 3 X60A4695A (Id. at 235; 237-38; 240-43; 245-50; 252; 254-62; 264-65; 267-74.)
- Ex. 29: Printed copies of photos from Axon Body 3 X60A4564A and Axon Body 3 X60A4695A (Id. at 276; 277-283.)
- Ex. 30: Printed copies of photos from Axon Body 3 X60A4695A (Id. at 285-87.)
- Ex. 31: Printed copies of photos from Axon Body 3 X60A4695A, Axon Body 3 X60A4564A and Axon Body 3 X60A4695A (Id. at 289-95; 296-98; 299-303.)
- Ex. 32: Printed copies of photos from Axon Body 3 X60A4564A, Axon Body 3 X6033369R, Axon Body 3 X60A4564A, and Axon Body 3 X60A4695A (Id. at 305-06; 307-08; 309-10; 312-17.)
- Ex. 33: Printed copies of photos from Axon Body 3 X6033369R and Axon Body 3 X60A4564A (Id. at 319-22; 323-24.)
- Ex. 34: Printed copies of photos from Axon Body 3 X60A4695A, Axon Body 3 X6033369R, and Axon Body 3 X60A4695A (Id. at 326-31; 332; 333.)
- Ex. 35 and 36: Printed copies of photos from Axon Body 3 X60A4695A and some unmarked photos (Id. at 335-38; 340-48; 349-52.)
- Ex. 37 and 38: Printed copies of unmarked photos (Id. at 354-55; 357-66.)

- Ex. 39: Unidentified text re Clinical Restraints and Seclusion (Id. at 368-69.)

With his opposition to defendants' motion, plaintiff submitted the following evidence:

- Plaintiff's declaration dated December 1, 2025 (ECF No. 54.)
- Thumb drive, Bate stamped DEF 000001-000008, 000009-000026 (ECF No. 53 at 39.)
- Ex. M: Plaintiff's arrest history (Id. at 42-54.)
- Ex. N: Printed copies of photos from body cameras showing detectives with plain clothes, not uniforms (Id. at 56-60.)
- Ex. O: Printed copies of photos from body cameras showing inconsistencies in time stamps and defendant Fred Rodriguez not traveling alone (Id. at 62-69.)
- Ex. P: Plaintiff's Supplemental Amended Affidavit, July 23, 2025 (Id. at 71-83.)
- Ex. Q: Photos of plaintiff's back brace inside his bag (Id. at 85-86.)
- Ex. R: Printed copies of photos from body cameras showing plaintiff's hands up prior to being yanked from vehicle (Id. at 88-91.)
- Ex. S: Printed copies of photos from body cameras showing plaintiff not cuffed, defendants holding plaintiff's legs, using excessive force (Id. at 92-104.)
- Ex. T: Printed copies of photos from body cameras showing detective holding plaintiff's leg down, and plaintiff's feet are together, not flailing or kicking (Id. at 106-10.)
- Ex. U: Mercy San Juan medical records from May 2-3, 2023 (Id. at 112-20.)
- Ex. V: Printed copy of photo from body cameras showing defendant Fred Rodriguez not traveling alone (Id. at 122.)
- Ex. W: Mercy San Juan medical records from May 2-3, 2023 (Id. at 124-27.)
- Ex. X: Defendant Joshua Langensiepen's statement his body camera was on (Id. at 129.)
- Ex. Y: Sacramento Police Department body worn camera policy (Id. at 131-34.)
- Ex. Z: Sacramento County District Attorney's Office Bureau of Directives Manual "Use of Force" (Id. at 136-45.)
- Ex. AA: Page 27 from People v. Larry Brookshire, 23FE008042 Dec. 15, 2023 court transcript (Id. at 147.)
- Ex. BB: Printed copies of photos from body cameras showing defendants Joshua Langensiepen, Jason Carver and Gabriel Montano reading medical record confirming plaintiff's fractured hand and back (Id. at 149-54.)
- Ex. CC: Printed copies of photos from body cameras footage at Mercy San Juan (Id. at 156-94.)
- Ex. DD: Printed copies of camera footage from Main Jail booking area showing restraints being removed from plaintiff (Id. at 196-204.)

B. Defendants' Evidence

Defendants submitted the following evidence:

- Thumb drive containing Ex. A: Deputy Gabriel Montano's body-worn camera footage; Ex. B: Deputy Gabriel Montano's body-worn camera footage; Ex. C: Deputy Jason Carver's body-worn camera footage; Ex. D: Deputy Jason Carver's body-worn camera footage; Ex. E: Detective Fred Rodrigues's body-worn camera footage; Ex. F: Detective Joshua Langensiepen's body-worn camera footage; Ex. G:

Detective Joshua Langensiepen's body-worn camera footage; Ex. H: Sacramento County Jail main garage footage; Ex. K: Detective Andrey Nedeoglo's body-worn camera footage; and Ex. L: Sacramento County Jail main booking area video footage.

- Declaration of John R. Whitefleet, Attorney at Law, attesting to validity of Sacramento County Jail main garage and booking area camera footage (Exs. H, L) and providing a copy of the Ramey Arrest Warrant issued for the arrest of plaintiff for assault with a deadly weapon and kidnapping during carjacking (Ex. I), and plaintiff's March 20, 2025 deposition transcript (Ex. J). (ECF No. 47-3; ECF No. 51-6.)
- Declarations of defendant Gabriel Montano (ECF No. 47-4; ECF No. 51-7.)
- Declarations of defendant Jason Carver (ECF No. 47-5; ECF No. 51-8)
- Declarations of defendant Fred Rodriguz (ECF No. 47-6; ECF No. 51-9.)
- Declarations of defendant Joshua Langensiepen (ECF No. 47-7; ECF No. 51-10.)
- Declarations of defendant William Hertoghe (ECF No. 47-8; ECF No. 51-12.)
- Declarations of defendant Andrey Nedeoglo (ECF No. 47-9; ECF No. 51-11.)

C. Video Footage

Both plaintiff and defendants submitted thumb drives containing video footage from defendants' body worn cameras and cameras at the Sacramento County Main Jail. The Supreme Court has stated that, when ruling on motions for summary judgment, courts "should [ ] view [ ] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 380-81 (2007). However, "[t]he mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage," and "[t]he record is viewed in the light most favorable to the nonmovants[.]" Vos v. City of Newport Beach, 892 F.3d 1024, 1028 (9th Cir. 2018) (citing Scott, 550 U.S. at 380 (focusing on whether a party's version of events "is so utterly discredited by the record that no reasonable jury could have believed him")). Accordingly, the Court will consider the video footage but draw all reasonable inferences in plaintiff's favor.

V. FAILURE TO COMPLY WITH LOCAL RULE 260

In their opposition to plaintiff's motion for summary judgment, defendants argue that they are entitled to summary judgment because plaintiff failed to comply with Local Rule 260(b), which requires that a party moving for summary judgment shall provide a "Statement of Undisputed Facts" that cites to the evidentiary basis for each undisputed fact. (ECF No. 47 at 6.) In addition, defendants argue that all undisputed facts must be based on "materials in the record" such as affidavits or depositions. (Id. (citing Fed. R. Civ. P. 56(c)).) With their opposition,

defendants filed a statement of undisputed facts as required by Local Rule 260(a). (ECF No. 47-1.) Plaintiff did not file a reply.

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). However, the Ninth Circuit instructs district courts to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Further, plaintiff's failure to comply with Local Rule 260(b) is not a concession to defendants and is not grounds alone to deny plaintiff's motion for summary judgment. See Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003) ("A motion for summary judgment cannot be granted simply because the opposing party violated a local rule. . . .") (citations omitted). In addition, plaintiff provided his own declarations, and his second amended complaint is verified and may also serve as his affidavit in opposition to the motion for summary judgment. See Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000). Further, plaintiff provided a statement of undisputed facts with his opposition to defendants' motion for summary judgment. (ECF No. 55.)

Accordingly, the Court considers the record before it in its entirety despite plaintiff's failure to comply with the applicable rules in filing his motion for summary judgment. However, only those assertions in plaintiff's verified pleading and declarations that are based on his personal knowledge or have evidentiary support in the record are considered.

## VI. ALLEGED EXCESSIVE FORCE

Both parties move for summary judgment on all of plaintiff's claims on grounds that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. (ECF No. 46; ECF No. 51.) In his amended complaint, plaintiff claims excessive force was used against him during the arrest, while he was transported from the law enforcement vehicle to the hospital, and at the jail garage. (ECF No. 46.) In his motion, plaintiff raises a new claim alleging excessive force was used against him at the hospital as he was transported back to the law enforcement vehicle. (Id. at 32-33.)

A. Governing Standards

A claim that a law enforcement officer used excessive force during the course of an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Tennessee v. Garner, 471 U.S. 1, 7-8 (1985). This objective reasonableness analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citation and internal quotation marks omitted). The objective reasonableness analysis comprises a three-part test. Id. First, a court must "assess the quantum of force used to arrest [the plaintiff] by considering the type and amount of force inflicted." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1056 (9th Cir. 2003) (citations and internal quotation marks omitted). Second, a court must consider the government's countervailing interests in applying the force used, which may include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007) (quoting Graham, 490 U.S. at 396). Such factors are not exclusive, and the Court may consider other factors within the totality of circumstances, including "[w]hat other tactics if any were available to effect the arrest." Bryan v. MacPherson, 630 F.3d 805, 831 (9th Cir. 2010). Third and finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." Young v. County of Los Angeles, 655 F.3d 1156, 1161 (9th Cir. 2011). In striking this balance here, the court "must consider the risk of bodily harm that [the detective defendants'] actions posed to [plaintiff] in light of the threat to the public that [the detective defendants were] trying to eliminate." Scott, 550 U.S. at 383.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Further, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

situation." Id. at 396-97. "Therefore, courts 'are free to consider issues outside the three enumerated [in Graham] when additional facts are necessary to account for the totality of circumstances in a given case.' " See Velazquez v. City of Long Beach, 793 F.3d 1010, 1024 (9th Cir. 2015) (alteration in original) (quoting Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)).

"[T]he reasonableness of force used is ordinarily a question of fact for the jury." Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (citation omitted).

B. Plaintiff's Arrest (Claim One)

It is undisputed that at 2:18 a.m. on May 31, 2023, a superior court judge issued a felony warrant for plaintiff's arrest based on a finding of probable cause that plaintiff committed the following crimes on May 30, 2023: assault with a deadly weapon (firearm) in violation of California Penal Code § 245(a)(2) and kidnapping during carjacking in violation of California Penal Code § 209.5. (Defs.' Ex. I.) Defendant Fred Rodriguez learned one firearm was recovered from the May 30, 2023 crime scene, but a second firearm was still outstanding. (ECF No. 51-9 at ¶ 4.) The Court finds it undisputed that the detectives were aware of plaintiff's extensive criminal history with multiple arrests and convictions, which included carrying a concealed stolen weapon, and resisting arrest. (ECF No. 51-9 at ¶ 3; ECF No. 51-11 at ¶ 3; ECF No. ECF No. 53 at 51.) It is undisputed that law enforcement considered plaintiff to be armed, dangerous and posed a threat to the public and law enforcement.

*1. The Video Evidence*

Defendants Fred Rodriguz, Joshua Langensiepen, William Hertoghe, and Andrey Nedeoglo (the detective defendants) responded to the scene where plaintiff was subsequently arrested. Initially, in his verified second amended complaint, plaintiff alleges that while removing plaintiff from the vehicle defendant Andrey Nedeoglo seized plaintiff's right hand first

and then grabbed plaintiff's left hand. (ECF No. 13 at 5.) However, the body camera footage shows that defendant Andrey Nedeoglo pulled plaintiff from the vehicle by plaintiff's sweatshirt. (Axon Body 3 X60335349 (DEF 000001) (Ex. K) at 1:00-02.) No one grabbed plaintiff's hands to remove him from the vehicle. (Id.) Indeed, in his supporting declarations plaintiff admits that he was pulled out of the vehicle by his sweatshirt. (ECF No. 46 at 29; ECF No. 54 at 3.)

The detective defendants declare plaintiff was not complying with orders to exit the vehicle with his hands up, but none of the body camera footage has orders directing plaintiff to exit the vehicle.[2] Rather, detectives order plaintiff to "get your hands up, don't move and don't you move, and hands up, hands!" (Axon Body 3 X60335349 (DEF 000001) (Ex. K) at :43-44; :51-52, :52-53; :57-59.) But in his deposition, plaintiff testified that he was instructed to exit the vehicle. (Pl.'s Dep. at 62 at 19.)

Plaintiff declares he put his hands up, but defendants declare plaintiff did not comply. In his deposition, plaintiff also testified that he showed the detective plaintiff's hands. (Pl.'s Dep. at 58:19-25; 59:25-60:2.) In the video, plaintiff is bent over, with a blanket over him, and the video does not clearly show whether plaintiff's hands were up. (Id. at :57-1:00.)

Defendant Andrey Nedeoglo declares he pulled plaintiff out of the rear passenger seat of the vehicle by pulling on plaintiff's sweatshirt and "placed him on the ground." (ECF No. 51-11 at ¶ 8.) Defendants Fred Rodriguez and William Hertoghe also declare plaintiff was "placed on the ground." (ECF No. 51-9 at ¶ 9; ECF No. 51-12 at ¶ 11.) Plaintiff claims defendant Andrey Nedeoglo slammed plaintiff to the ground. The video does not show plaintiff hitting the ground, but does show him crying out in pain on his back shortly after his removal from the vehicle.[3] (Axon Body 3 X60335349 (DEF 000001) (Ex. K) at 1:00-03.)

Further, the body camera footage shows defendant Andrey Nedeoglo was initially holding plaintiff's left wrist, not plaintiff's left hand. (Id. at 1:05.) Subsequently, defendant Andrey

[2] Defendants refer to :43 on defendant Rodriguez' body camera footage (ECF No. 57-1 at 9 ¶ 16), but there is no sound on this footage until the 1:00 mark. (Axon Body 3 X60338349 (DEF 000002) (Ex. E).)

[3] In his deposition, plaintiff testified that he stepped out of the vehicle. (Pl.'s Dep. at 15-17.) Plaintiff testified he was instructed to step out, and he stepped out right outside the vehicle. (Id. at 62:17-22.) This testimony is refuted by the video footage.

Nedeoglo was holding plaintiff's left hand immediately before and while the handcuffs were being applied. (Id. at 1:25-43.) Although the detectives were holding plaintiff's hands while the handcuffs were being placed and closed, no twisting to cause pain was obvious in the video; meanwhile, plaintiff was complaining of pain to his back and pressure. (Id. at 1:30-44.) While detectives are yelling stop resisting, plaintiff is also yelling "I'm not resisting," and "I'm fractured." (Id. at 1:02-44.)

The officers then advised plaintiff to "hold on," they were going to search him. (Id. at 1:43-44.) Plaintiff tried to roll a different way, and an officer told plaintiff to "stop rolling on us" and to "stay still." (Id. at 1:48-55.) The detectives rolled plaintiff back and forth while emptying his pockets. (Id. at 1:55-2:42.) But viewing the video in the light most favorable to plaintiff, plaintiff does not appear to be resisting while he's on the ground. He does appear to be in pain, and does move here and there, but he does not appear to be resisting or attempting to get away.

After the detectives complete searching plaintiff's pockets, someone said, "let's stand him up," and told plaintiff to put his feet under him, and the detectives lifted plaintiff up and helped plaintiff walk over to the detective's pickup. (Id. at 2:44-3:06.) Another officer held plaintiff off camera while detectives readied the detective's pickup truck. (Id. at 3:27-57.) Then the officers helped plaintiff into the pickup. (Id. at 3:58-4:23.) In the pickup, plaintiff was groaning, moving around, and leaning forward while the detective defendants applied restraints. (Id. at 4:20-5:02.) But again, it did not appear that plaintiff was attempting to escape. Once the detectives lifted plaintiff up, helped him move to the pickup and helped him get into the pickup, no additional force was applied to plaintiff.[4]

It is undisputed that while plaintiff was in the vehicle before his removal by defendant Andrey Nedeoglo, plaintiff was not wearing a back brace, a hand splint, or any other medical equipment that would have put defendants on notice of plaintiff's prior injuries. It is undisputed that law enforcement trained guns on the driver and plaintiff, maintaining lethal coverage, before

---

[4] In his statement of disputed facts, plaintiff claims that he almost fell getting into the detective's pickup and hit his head on the door. (ECF No. 55 at 15 (citing Axon Body 3 X60335349 (DEF 000001) at 15:45:49).) But plaintiff does not attribute this to the use of unreasonable force by any defendant.

and during plaintiff's removal from the vehicle. Once plaintiff was secured in the detective's pickup, the detectives obtained consent from the driver to search the vehicle plaintiff was extracted from. (ECF No. 51-11 at ¶ 13.) The detectives located a loaded semi-automatic handgun under the rear seat, in close proximity to where plaintiff was sitting prior to extraction. (Id.)

*2. Discussion*

Following the Supreme Court's instruction, the Court views the facts as depicted by the video evidence, see Scott, 550 U.S. at 380-81, drawing all reasonable inferences in plaintiff's favor so long as plaintiff's version is not contradicted by the video evidence, see Vos, 892 F.3d at 1028. Even after drawing all reasonable inferences in plaintiff's favor and considering that excessive force claims should be decided on summary judgment "sparingly," Avina, 681 F.3d at 1130, the Court concludes that the officers' use of force was reasonable under the circumstances, no reasonable jury could find for plaintiff, and the detective defendants are therefore entitled to summary judgment.

As to the type and amount of force inflicted, the detective defendants acknowledge some use of force during the arrest: defendant Andrey Nedeoglo pulled plaintiff from the vehicle by his sweatshirt and positioned plaintiff's arm behind his back as he was taken to the ground; defendant William Hertoghe used his knee on the upper part of plaintiff's back and maintained control of plaintiff's right arm while defendant Andrey Nedeoglo maintained control of plaintiff's left arm; and defendant Joshua Langensiepen maintained control of plaintiff's lower body while he was handcuffed and searched. (ECF No. 47 at 9; ECF No. 51-1 at 6-7.) The detective defendants argue that such force was reasonable and necessary in light of plaintiff's attempt to kick his legs, twist his body, and pull himself away from the control holds, and the arm hold was maintained to apply handcuffs. The video shows the use of force consisted of pulling plaintiff from the vehicle, maneuvering him to the ground, twisting plaintiff's wrists and arms in order to apply handcuffs behind plaintiff's back, applying pressure to his neck and lower extremities to hold him still, and rolling him back and forth to search his pockets. The video does not show that the detective defendants used force disproportionate to the need for force to restrain plaintiff and

take him into custody. Plaintiff argues that the force used was excessive because he raised his hands when ordered, he was not resisting, and defendants' actions subjected plaintiff to pain due to his pre-existing injuries. However, the detective defendants were not aware of plaintiff's pre-existing medical conditions at the time of plaintiff's arrest. Plaintiff's movements may have been the result of pain rather than intentional acts of resistance. On the other hand, a reasonable officer in the detective defendants' positions, not knowing of plaintiff's medical conditions, could have viewed plaintiff's movements as resistance. Plaintiff does not dispute that he was subsequently seen by medical staff at Mercy San Juan Hospital, and was also cleared for booking by medical at the Sacramento County Main Jail.

The Court must also consider the severity of the crimes supported by the felony warrant in evaluating the use of force. See S.R. Nehad v. Browder, 929 F.3d 1125, 1136 (9th Cir. 2019). The crimes at issue were very severe where a felony warrant was issued for plaintiff for multiple felonies, including assault with a deadly weapon (firearm), kidnapping and carjacking. "[A] particular use of force would be more reasonable, all other things being equal, when applied against a felony suspect than when applied against a person suspected of only a misdemeanor." See S.R. Nehad, 929 F.3d at 1136 (citing Miller v. Clark Cty, 340 F.3d 959 (9th Cir. 2003)). Thus, "the government's interest in apprehending . . . felons . . . 'strongly' favor[s] the use of force." Id. (citing Miller, 340 F.3d at 964). In addition, a firearm used in the crime was still missing, raising an inference the weapon was still in plaintiff's possession. These crimes presented a serious objective threat to the safety of officers and the public. As a result, the government's interest in gaining control over plaintiff was high, before plaintiff could harm anyone else, and warranted the threat of lethal coverage as well as the use of some force during plaintiff's arrest. Subsequently, a loaded semi-automatic handgun was located in the vehicle in close proximity to where plaintiff was sitting prior to extraction from the vehicle, supporting defendants' concern for their safety and the safety of the public.

Overall, balancing the use of force and the government's interest in apprehending a felon on a warrant for serious violent crimes, the Court concludes that the modest amount of force applied here was objectively reasonable to effectuate plaintiff's arrest and bring him under

control, and no reasonable jury could find for plaintiff on the excessive force claim. See S.R. Nehad, 929 F.3d at 1136; see also Bennett v. Gow, 345 F. App'x 286 (9th Cir. 2009) (holding that ground take-down was not objectively unreasonable use of force where plaintiff twisted away while being handcuffed). The detective defendants are entitled to summary judgment on this claim.

C. Transport from Vehicle to Hospital (Claim Two)

In his second claim, plaintiff alleges that at the hospital, defendants William Hertoghe, Andrey Nedeoglo, and Joshua Langensiepen roughly removed plaintiff from the law enforcement vehicle with no regard to plaintiff's pain and injuries. (ECF No. 13 at 6.) While being pulled out of the vehicle, plaintiff allegedly fell to the ground and hit his left temple due to their negligence and the defendants "joked about it." (Id.) Plaintiff alleges he was roughly snatched off the ground and half-walked, half-dragged into the hospital. (Id.) However, in his supplemental affidavit plaintiff amended this claim to merely state he was rolled into the hospital in a wheelchair.[5] (ECF No. 46 at 32-33.)

Video footage of plaintiff's arrival at the hospital and removal from the vehicle confirms that plaintiff was carefully removed from the vehicle, placed into a wheelchair, and wheeled into the emergency room without incident.[6] (Axon Body 3 X6033369R (DEF 000003) at 31:50-32:40.) Defendants William Hertoghe, Andrey Nedeoglo, and Joshua Langensiepen are entitled to summary judgment on plaintiff's second claim.

D. From Patrol Car to Booking (Claim Three)

In his third claim, plaintiff claims he was transported from the hospital to the Sacramento County Main Jail by defendants Gabriel Montano and Jason Carver, who then removed plaintiff from the vehicle and forced him into a WRAP restraint despite plaintiff's prior injuries, causing plaintiff excruciating pain in his back as well as his fractured left hand from being forced to sit on

[5] Plaintiff claims that his memory was refreshed by the video footage disclosed to him in discovery on March 20, 2025. (ECF No. 46 at 32.) Plaintiff now seeks to pursue an excessive force claim based on his transport from the hospital to the patrol car. (Id. at 32-33.)

[6] Defendants' statement of undisputed facts identifies the video footage as from the Body Worn Camera of Joshua Langensiepen, but cite Exhibit G (DEF 000004). (ECF No. 51-2 at 5-6.) However, the relevant video footage is contained in Exhibit F (DEF 000003).

his hands while handcuffed. (Id. at 7.) In his supplemental affidavit, plaintiff declares defendant Carver forced plaintiff into the cart handcuffed so he was sitting on his fractured hand causing pain, and the deputies then strapped his upper body and his legs. (ECF No. 46 at 37.) Plaintiff declares that defendant Carver "forced [plaintiff] into the wrap restraint device." (Id.; see also ECF No. 54 at 7.)

Plaintiff's allegations are clearly refuted by the video footage. First, plaintiff was not required to sit in the back of the patrol car. Rather, plaintiff was allowed to lay down. Body 3 X60A4564A at 19:30 (DEF 000005) shows plaintiff being seat belted in while he is laying down in the back seat of the patrol car. At the jail, the video shows plaintiff laying in the back seat, not sitting, and shows defendants Gabriel Montano and Jason Carver carefully removed plaintiff from the vehicle and placed him on the wrap cart. (Body 3 X60A4695A at 19:54:43 to 19:55:50 (DEF 000007).) Neither defendant applied additional restraints to plaintiff at this time, and the video does not show any defendant "forcing" plaintiff into wrap restraints. (Id.) The Main Jail camera confirms plaintiff's removal from the vehicle, careful placement on the wheeled cart, and no additional placement of restraints on plaintiff. (DEF 000012 at 2:41-3:24.) Plaintiff fails to demonstrate that the use of the wrap cart, absent the application of additional restraints, constitutes an unreasonable use of force, particularly given plaintiff's acknowledged limited mobility (ECF No. 46 at 22). Defendants are entitled to summary judgment on plaintiff's third excessive force claim based on his removal from the patrol car and placement on the wrap cart.

In his opposition to defendants' motion for summary judgment, plaintiff objected that he was not provided video footage from when he was pushed into the jail to the booking area, and argues that although no one is seen in the jail garage putting restraints on plaintiff, in the booking area video at 2:51:25 to 2:52:07 (Exhibit L) (DEF 000018), deputies can be seen removing restraints from plaintiff before lifting him from the wrap cart. (ECF No. 53 at 35.) However, in his declarations, plaintiff does not state that any defendant applied additional restraints to plaintiff after he was pushed into the jail or while he was waiting in the booking area.[7] (ECF No. 46 at 37-

[7] Defendants confirm that plaintiff was provided all available video footage. (ECF No. 57 at 5 n.1.)

38; ECF No. 53 at 82-83; ECF No. 54 at 7-8.) Rather, plaintiff's declarations were that when plaintiff was removed from the vehicle at the jail garage, defendant Carver forced plaintiff into wrap cart restraints (id.), which is clearly refuted by the video footage. In addition, both defendants Gabriel Montano and Jason Carver declare that they did not place wrap restraints on plaintiff while he was in the wrap cart. (Montano Decl. at 4; Carver Decl. at 10.) Plaintiff's speculation that restraints may have been applied at another time is insufficient. Defendants Gabriel Montano and Jason Carver are entitled to summary judgment.

E. Alleged Delay During Main Jail Booking

In his amended complaint, plaintiff alleges he was forced to sit in the wrap cart in the jail booking area for one to one and a half hours. (ECF No. 13 at 7.) In his supplemental amended affidavit, plaintiff claims video footage shows he was in the wrap cart for two hours and 53 minutes. (ECF No. 46 at 37.) Plaintiff declares it was even longer because the video did not show when plaintiff was first put into the wrap cart. (Id.) Plaintiff was seen by a nurse "close to 2 hours after being in the wrap cart" and was still left in the wrap cart despite his complaints of extreme pain. (Id.) In plaintiff's declaration submitted with his opposition to defendants' motion for summary judgment, plaintiff declares he was restrained in the wrap cart for at least two hours and 53 minutes, and was not removed from the wrap cart until deputies removed the restraints and lifted him out of the wrap cart at 2:52:07. (ECF No. 54 at 8 (citing Ex. L (DEF 000018) BK 14 Arrest Report Rm Station 1).)

Defendants argue that petitioner does not connect any defendant to this delay, but merely alleges that defendant Carver accompanied an unknown deputy who pushed plaintiff into the booking area. (ECF No. 51-1 at 9.) Defendants contend that the amount of time the booking process takes does not depend on any individual deputy, but rather is an administrative function of the jail. (Id. at 10.) In addition, defendants note that plaintiff concedes he was seen by a nurse while he was held in the booking area. (Id.)

Plaintiff has failed to meet his burden to show that either defendant Gabriel Montano or Jason Carver was responsible for the delay in booking plaintiff into the jail. Plaintiff includes no facts demonstrating that either defendant interfered with or contributed to the delay, or were at all

responsible for processing plaintiff into the jail. (ECF No. 46 at 22-23; 37-38.) Plaintiff's motion for summary judgment on this claim should be denied, and defendants should be granted summary judgment on this claim.

F. Putative New Claim: Transport from Hospital to Patrol Car

In his motion for summary judgment, plaintiff added new allegations to his second claim pertaining to how plaintiff was removed from the hospital and taken to the patrol car for transport to the jail. (ECF No. 46 at 18-22.) Plaintiff now alleges that while he was at the hospital, he was pushed from a chair, forced to the ground, then carried to the car, where he was put on the ground and had knees in his back, and defendants William Hertoghe and Gabriel Montano pushed his head into the ground. (Id.) Plaintiff also included these new arguments in his opposition to defendants' motion for summary judgment. (ECF No. 53 at 29.) Defendants contend this is improper because these new allegations were not included in the second amended complaint. (ECF No. 47 at 6-7; ECF No. 57 at 4.)

Defendants are correct that these new allegations were not included in the operative pleading. As discussed above, plaintiff's excessive force claims at the hospital were limited to plaintiff's transfer from the patrol car to the hospital. Plaintiff was present during the May 31, 2023 incidents and should have included these claims in his second amended complaint filed on May 3, 2024 (ECF No. 13). But even if plaintiff's memory was faulty as he claims, he acknowledges his memory was refreshed by the video footage disclosed to him in discovery on March 20, 2025. (ECF No. 46 at 32.) Plaintiff did not file a motion to amend to add these new claims, opting instead to simply include these new claims in his motion for summary judgment filed almost six months later. Plaintiff fails to show good cause for such delay. By simply including this putative new claim in his dispositive motion, plaintiff deprived defendants of fair notice of such claims in violation of Rule 8 of the Federal Rules of Civil Procedure. See Pickern v. Pier 1 Imports (U.S.) Inc., 457 F.3d 963, 969 (9th Cir. 2006). Because these new allegations were not included in plaintiff's operative pleading and plaintiff fails to show good cause for raising the new claims at summary judgment, the new claims are not at issue on summary judgment and plaintiff's motion should be denied as to these new claims. See id.

VII. QUALIFIED IMMUNITY

In light of the above findings recommending that defendants be granted summary judgment, the Court need not address defendants' qualified immunity arguments.

VIII. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for summary judgment (ECF Nos. 46, 49) be denied, and defendants' motion for summary judgment (ECF No. 51) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 12, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/broo2001.xmsj